IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| MICHAEL ELDER, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 4:13-cv-00047 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| OFFICER THOMPSON, | ) | By: Hon. Jackson L. Kiser |
| | ) | Senior United States District Judge |
| Defendant. | ) | |

This matter came before the Court for a bench trial on the merits on May 22, 2014. Plaintiff Michael Elder ("Plaintiff"), who was proceeding *pro se*, presented his case-in-chief and examined two witnesses. He did not, however, testify on his own behalf. After he rested his case, Defendant Officer E. K. Thompson ("Defendant") made a motion for judgment pursuant to Rule 52(c) of the Federal Rules of Civil Procedure. Following the close of Plaintiff's case-in-chief, I concluded that the evidence did not support Plaintiff's claim that Defendant used excessive force during his arrest. As I stated at the time, Plaintiff's case depended heavily on his testimony. When he chose not to testify, there was simply no evidence to contradict Defendant's version of events, and that version of events did not show that Defendant used excessive force. When I granted Defendant's motion for judgment, I informed the parties of my reasoning. This Memorandum Opinion serves to supplement my in-court statements.

During his case-in-chief, Plaintiff only called two witnesses.[1] First, Plaintiff called and examined Defendant. Defendant's testimony established that he knew Plaintiff from a prior encounter. Approximately one year before the incident that gave rise to this litigation, Plaintiff had been the victim of an assault. Defendant was involved, in some capacity, with the

---

[1] Any evidence submitted during the summary judgment stage is not considered at trial unless it is independently presented as evidence. Therefore, because Plaintiff did not testify himself, his version of events cannot be considered.

investigation of that crime. Through this interaction, Defendant knew Plaintiff by name and sight.

Almost a year later, Defendant was in the Danville Police Department and noticed what he assumed to be a warrant for Plaintiff's arrest in the slots[2] that hold such documents. He did not read or otherwise inspect the document in question. As it would turn out, the "warrant" was not an arrest warrant at all, but merely a "show cause" summons that did not authorize or permit Plaintiff's arrest. At some point after seeing the document, Defendant went with several other officers to Plaintiff's brother's residence in an attempt to serve this "warrant," but the officers were unable to locate Plaintiff. On October 25, 2011, while Defendant was on patrol near Plaintiff's apartment complex, Defendant drove through the complex looking for Plaintiff. He saw Plaintiff in the driver's side of a white car parked near Plaintiff's apartment, and an unidentified male sitting in the passenger's seat.

Defendant pulled over and parked his car in front of the car in which Plaintiff was seated. Defendant instructed Plaintiff to step out of the car, and Defendant advised him that there was a warrant for his arrest and that Plaintiff would have to come downtown. Plaintiff protested and told Defendant that the issue to which Defendant was referring had been taken care of, and Plaintiff attempted to show paperwork proving his point to Defendant. Defendant did not look at the documents, even though he had never inspected the "warrant" he was attempting to serve.

Instead, Defendant radioed the dispatcher and asked her to run a warrants check on Plaintiff. The dispatcher returned an automated tone that indicated to Defendant that Plaintiff's name had returned a positive warrants check. Defendant verbally confirmed his understanding

---

[2] Paperwork, such as arrest warrants and summonses, are kept in slots called "pigeonholes" at the Danville police station. Paperwork to be served is left in slots assigned to specific beats so that an officer may quickly pull any warrants or summonses to be served in his or her patrol area.

with the dispatcher, and she informed him that an "FTA"—meaning "failure to appear"—had been issued for Plaintiff.

Defendant's understanding of court-issued FTAs is that they are always in the form of a capias, or a warrant for arrest. What Defendant did not know at this point, however, is that the FTA issued for Plaintiff was *not* an arrest warrant, but merely a show-cause summons. Nevertheless, there was nothing that was known to Defendant on the date in question that undermined his belief that Plaintiff should be arrested.

After Defendant confirmed with the dispatcher that an FTA had been issued for Plaintiff, Defendant instructed Plaintiff to place his hands behind his back. Plaintiff refused and again implored Defendant to examine the paperwork. Defendant warned Plaintiff that, if he did not comply with Defendant's instructions, Defendant would pepper spray him. Plaintiff placed his hands behind his back, and Defendant placed handcuffs on his wrists.

Defendant then escorted Plaintiff to Defendant's police cruiser. When Defendant let go of Plaintiff's arm to open the car door, Plaintiff began to walk around the back end of Defendant's cruiser. Defendant grabbed Plaintiff's arm and instructed him to get in the car. Plaintiff refused and, in response, stiffened up to prevent Defendant from forcing him into the car. Defendant stepped away and warned Plaintiff again that, if he did not comply with Defendant's order, Defendant would pepper spray him. Plaintiff still refused to comply. Defendant withdrew his pepper spray and sprayed Plaintiff in the face. Defendant then attempted to place Plaintiff in the cruiser, but Plaintiff continued to resist Defendant's efforts passively. Defendant then deployed four "knee-nerve" strikes, wherein Defendant struck Plaintiff on the side of the leg with his knee four times. Once Plaintiff's leg finally buckled, Defendant was able to bend Plaintiff over and put him in the police cruiser. No other force was expended.

As Defendant was driving Plaintiff back to the police station for booking, Plaintiff requested medical attention for the pepper spray in his eyes. Defendant advised him that the burning would subside if he gave it time and air. Plaintiff never requested any further medical attention for his eyes. At the police station, an officer provided Plaintiff with a paper towel to wipe any excess chemicals off his face. From the time Defendant sprayed Plaintiff until the time Plaintiff was ultimately released, over an hour elapsed and Plaintiff only made a single request for medical attention.

Following Defendant's testimony, Plaintiff examined Philip Broadfoot, Chief of Police for the City of Danville. According to Chief Broadfoot, a preliminary investigation noted that Defendant had struck Plaintiff with a metal rod, not his knee, when he deployed the knee-nerve strikes. Chief Broadfoot also noted that this conclusion was erroneous and was ultimately corrected during a subsequent investigation. He testified that, if an individual attempts to "flee" around the back of the police car, such an event would be important enough to note in the officer's incident report. At trial, however, Plaintiff did not introduce any evidence that Defendant failed to note this event in his report. On cross examination, Chief Broadfoot testified that Defendant's actions were consistent with police department guidelines. Defendant was not disciplined for his actions during Plaintiff's arrest.

At the start of the case, I reminded Plaintiff, who was representing himself, that any questions he asked were not evidence, and that the only way I could treat his statements as evidence was if he testified under oath from the witness stand. After the testimony of his two witnesses (both treated as hostile witnesses), Plaintiff rested his case. I inquired if he intended to testify, and he replied that he did wish to offer testimony. I recessed court briefly to permit Plaintiff to prepare for his testimony and, when court reconvened, Plaintiff stated that he had

reconsidered and no longer wished to testify. Thereafter, Defendant's counsel made a motion for judgment under Rule 52(c), which I granted.

Under Rule 52(c), "[i]f a party has been fully heard on an issue during a nonjury trial and the court finds against that party on that issue, the court may enter judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue." Fed. R. Civ. P. 52(c). In the present case, Plaintiff presented his entire case and all the evidence he wished to present. That evidence simply did not establish that Defendant used excessive force on October 25, 2011, or that Defendant was deliberately indifferent to a serious medical condition.[3]

In order to succeed on his claim of excessive force, Plaintiff was required to show that the force used by Defendant was unreasonable under the circumstances. See Graham v. Connor, 490 U.S. 386, 394–96 (1989). "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Id. at 396 (internal quotations omitted). Proper application of this balancing test "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. Other appropriate considerations include:

      (1) The extent of the injury suffered,
      (2) The need for the application of force,
      (3) The relationship between the need and the amount of force used,
      (4) The threat reasonably perceived by the responsible officials, and
      (5) Any efforts made to temper the severity of a forceful response.

---

[3] Consistent with my Order on Defendant's motion for summary judgment, only two claims survived to trial: Plaintiff's claims of excessive force under the Fourth Amendment, and his claim that Defendant was deliberately indifferent to his serious medical condition. (See Order, Apr. 22, 2014 [ECF No. 71].)

Kevin F. O'Malley, Jay E. Grenig & Hon. William C. Lee, Federal Jury Practice and Instructions—Civil § 165.23 (6th ed. 2013). Even if Plaintiff's rights were violated by Defendant's actions, however, Defendant can only be held liable if he knowingly violated those rights, meaning Defendant's actions must have been objectively unreasonable under the circumstances. See id.

Based on the facts to which Defendant testified at trial, Defendant's actions were objectively reasonable. First, there is no evidence whatsoever that Plaintiff suffered any injury. Second, Plaintiff's repeated refusal to heed Defendant's reasonable instructions necessitated the use of some force. Third, although Plaintiff's compliance could have been obtained by other, less forceful means, I cannot say that the relationship between the need for and the amount of force used was unreasonable under the circumstances.[4]

In addition to these factors, the totality of the circumstances necessitates the conclusion that the force used was objectively reasonable. Defendant only utilized minimal, non-lethal force to effectuate Plaintiff's compliance with his orders. His force did not result in any proven injuries, and the effects of the pepper spray were short-lived. Moreover, all force ceased immediately once Defendant was able to place Plaintiff in the squad car. The fact that Plaintiff was handcuffed at all relevant points during Defendant's use of force does not change the analysis. It is overwhelmingly clear that, generally speaking, a handcuffed suspect can pose a

---

[4] With regard to the other considerations, and possibly because Defendant was not required to present any evidence, I cannot say one way or the other whether Plaintiff posed any threat to Defendant, or whether Defendant undertook reasonable efforts to temper the severity of a forceful response. Defendant testified that Plaintiff's resistance was merely passive and was comprised solely of stiffening up like a board and refusing to obey Defendant's commands.

serious a threat to an arresting officer. I see no reason to impose a heightened test on Defendant's conduct merely because Plaintiff was handcuffed.[5]

With regard to Plaintiff's claim of deliberate indifference to a serious medical condition, Plaintiff was required to show "a sufficiently serious medical need." Thomas v. Kincaid, Case No. 03-941, 2004 WL 3321472, at *5 (E.D. Va. June 30, 2004). Because Plaintiff did not testify, there was no evidence that Plaintiff had any medical needs whatsoever. The fact that Plaintiff asked to see a doctor at one point does not establish that there was a "sufficiently serious medical need" such that a Due Process violation was proven. In the absence of any evidence on this point, Plaintiff cannot prevail.

Faced with only Defendant's version of events, it is clear that Plaintiff did not prove his case at trial. Plaintiff's evidence failed to prove that Defendant's use of force established objectively unreasonable under the circumstances, and he failed to offer any evidence regarding his medical needs during or following his encounter with Defendant. Judgment for Defendant was appropriate on his remaining claims. For these reasons, I granted Defendant's Rule 52(c) motion for judgment.

The Clerk is directed to forward a copy of this Memorandum Opinion to all counsel of record and to Plaintiff. This case may be removed from the active docket of the Court.

Entered this 9th day of June, 2014.

                                             s/Jackson L. Kiser
                                             SENIOR UNITED STATES DISTRICT JUDGE

---

[5] "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." Graham, 490 U.S. at 396−97.